IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:22-cv-00032

UNCW CORPORATION,

    *Plaintiff*,

v.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY and
TRAVELERS INDEMNITY COMPANY,

    *Defendants*.

**COMPLAINT
AND JURY DEMAND**

Plaintiff UNCW Corporation ("UNCW Corp."), by and through the undersigned counsel, files this Complaint against Westchester Surplus Lines Insurance Company ("Westchester"), and Travelers Indemnity Company ("Travelers") (together, the "Insurers") and alleges as follows:

## INTRODUCTION

1. This case arises from UNCW Corp.'s Insurers' refusal to reimburse UNCW Corp. for millions of dollars of losses it has incurred to repair and replace damage caused by Hurricane Florence in September 2018 to its Seahawk residential complex located on the campus of the University of North Carolina at Wilmington.

2. UNCW Corp. is a non-profit North Carolina corporation which, pursuant to N.C.G.S. § 116-30-20, is an associated entity supporting the mission of the University of North Carolina at Wilmington (the "University"), which is a constituent institution of the University of North Carolina System. UNCW Corp.'s purpose is to enhance the University's educational mission, including, without limitation, assisting with the acquisition and financing of capital assets for the University.

3. Travelers issued a Commercial Property Insurance Policy for the policy period March 22, 2018 through March 22, 2019, identified by policy number KTK-CMB-5F37996-8-18 ("Travelers Policy") (together with the Westchester Policy, the "Policies"). The Travelers Policy provides $500,000,000 of broad, all-risk coverage for physical loss or damage to the covered property caused by any peril not specifically excluded in the Travelers Policy, including coverage for lost rental income due to the suspension of operations caused by direct physical loss or damage to covered property. A copy of the Travelers Policy is attached hereto as Exhibit A.

4. Westchester issued UNCW Corp. a Commercial Property Insurance Policy for the policy period March 22, 2018 through March 22, 2019, identified by policy number D37385013 008 ("Westchester Policy"). The Westchester Policy provides $2,803,276 of "deductible buy back" coverage for direct physical loss or damage to the covered property, including business interruption losses and lost rental income, caused by a named windstorm and which is also covered by the Travelers Policy. A copy of the Westchester Policy is attached hereto as Exhibit B.

5. Both Policies covered property owned by UNCW Corp. at the University of North Carolina at Wilmington's college campus, located at 601 S. College Road, Wilmington, NC 28403 (the "Property"), including buildings in the Seahawk residential complex: Seahawk Crossing, Seahawk Landing, Seahawk Village and Shops at the Crossing facilities (the "Seahawk Facilities").

6. Hurricane Florence made landfall in North Carolina on September 14, 2018.

7. As a result of sustained winds between 96-110 miles per hour and excessive rainfall from Hurricane Florence, UNCW Corp. sustained damage to the Seahawk Facilities.

8. As a result of the damage from Hurricane Florence, University operations were suspended from September 12, 2018, until October 8, 2018. Students were evacuated from the

University starting on September 11, 2018, with the majority of students being permitted to return to the University on October 6, 2018.

9. UNCW Corp.'s total expenses for damages suffered as a result of Hurricane Florence were $5,956,028.57 in property damage, and $1,380,812 in lost rental income from students while the Seahawk Facilities were closed.

10. Two industrial hygienists—SRP Environmental, LLC ("SRP") and UC Environmental, LLC ("UC Environmental" and collectively with SRP the "Industrial Hygienists")—were retained to inspect the Seahawk Facilities in the immediate aftermath of the hurricane.

11. Both SRP and UC Environmental each concluded that the water on the site following Hurricane Florence should be treated as "Category 3" water and therefore determined that materials impacted by that water must be removed and replaced.

12. UNCW Corp. followed the Industrial Hygienist's recommendations, including making permanent repairs by removing and replacing the impacted areas.

13. UNCW Corp. provided timely notice of the loss and its restoration plan to its Insurers and has complied with all other provisions of the Policies.

14. The Insurers have accepted coverage for some of the temporary repairs to the Seahawk Facilities, and Westchester has agreed to pay for the majority of UNCW Corp.'s lost rental income. However, the Insurers have denied coverage for the permanent repairs recommended by UNCW Corp.'s industrial hygienists, based on their conclusion that UNCW Corp.'s Hurricane Florence loss was "not a Category 3 water event and therefore any additional repairs related to Category 3 water will not be considered." Importantly, the Insurers have not provided—and indeed cannot provide—any evidence to rebut the conclusion reached by both of

UNCW Corp.'s industrial hygienists (which examined the site in the immediate aftermath of the Hurricane) that the Seahawk Facilities was impacted by Category 3 water.

15. Rather, based on the analysis of their own consultants conducted months after Hurricane Florence, the Insurers contend that the Industrial Hygienists' testing in the aftermath of the storm was insufficient or incomplete, and therefore the water at the site *might* not have been Category 3 water and the permanent repairs *might* not have been necessary.

16. Based on this position, the Insurers have only agreed to pay $960,240 of the $5,956,028.57 in property damage to the Seahawk Facilities suffered by UNCW Corp. as a result of Hurricane Florence's water damage.

17. To date, the Insurers have not paid any of UNCW Corp.'s losses for Hurricane Florence, including the losses they have agreed are covered under the Policies.

18. By failing to reimburse UNCW Corp. for its costs to repair and replace the physical damage to the Seahawk Facilities caused by Hurricane Florence, the Insurers have breached their coverage obligations under the Policies.

19. Moreover, the Insurers have acted in bad faith under North Carolina law by refusing to pay for those losses. UNCW Corp. acted in accordance with the analysis and recommendations of the Industrial Hygienists to repair the Seahawk Facilities and resume operations as quickly and as safely as reasonably possible. The Insurers were timely notified of the loss and could have conducted their own inspections and run their own tests in the days and weeks following the storm but failed to do so. The Insurers' denial is not predicated on a difference in opinion by competing experts, but on hindsight critiques of UNCW Corp.'s actions in the wake of the storm and speculation about the results of hypothetical additional tests that the Insurers could have conducted. Therefore, the Insurers denial is not based on an honest disagreement about coverage,

4

Case 7:22-cv-00032-FL    Document 1    Filed 02/25/22    Page 4 of 18

and instead is a product of malice, gross negligence, oppression, or wanton and reckless disregard of UNCW Corp.'s coverage rights.

20. The Insurers have also willfully acted in bad faith and employed unfair and deceptive practices and acts in violation of North Carolina law by not attempting to effectuate a prompt, fair, and equitable settlement of the claim even though their liability is clear and by forcing UNCW Corp. to institute litigation to recover under the Policies due to their refusal to offer a full reimbursement for UNCW Corp.'s losses.

21. UNCW Corp. filed this lawsuit only after the Insurers refused to agree to a brief extension of a tolling agreement set to expire at the end of February 2022, which would have allowed the Parties additional time to try to resolve the claim.

22. For all these reasons, UNCW Corp. requests that the Court, among other things: (1) enter a declaratory judgment declaring that the Insurers are obligated to reimburse UNCW Corp. for losses incurred as a result of the physical loss of and damage to the Seahawk Facilities; (2) find that the Insurers have breached their contractual duty to reimburse UNCW Corp. for losses arising from all risks of physical loss of or damage to the Seahawk Facilities; (3) find that the Insurers have denied coverage in bad faith under North Carolina law; and (4) find that the Insurers have engaged in unfair and deceptive practices and acts, in violation of North Carolina law.

## PARTIES, JURISDICTION, AND VENUE

23. UNCW Corp. is a non-profit corporation organized under the laws of North Carolina with its principal place of business located at 601 S. College Road, Wilmington, North Carolina 28403.

24. Defendant Travelers is a Minnesota corporation with its principal place of business located at 485 Lexington Avenue, New York, NY 10017.

25. Defendant Westchester is a Georgia corporation with its principal place of business located at 1133 Avenue of the Americas, New York, NY 10136. Westchester is a subsidiary of Chubb Limited Insurance Company.

26. The Court has subject matter jurisdiction 28 U.S.C. § 1332 because there is complete diversity between the Parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

27. The Court has personal jurisdiction over the Insurers with respect to the claims set forth in this Complaint pursuant to N.C.G.S. § 1-75.4 because, among other things, the insurance contracts were delivered to and performed in North Carolina, the insurers promised to insure UNCW Corp. product in North Carolina, UNCW Corp. was a resident of North Carolina when it suffered physical loss and/or damage to its Seahawk Facilities, UNCW Corp. suffered physical loss and/or damage to its Seahawk Facilities in North Carolina, the Insurers' breach of the Policies has caused and continues to cause damage to UNCW Corp. in North Carolina, and the Insurers solicit and sell insurance contracts and otherwise transact business in the State of North Carolina.

28. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial portion of the acts and conduct giving rise to the claims occurred within the district.

## FACTUAL ALLEGATIONS

### A. UNCW Corp.'s Policies Provide Broad Coverage for Physical Loss of and Damage to UNCW Corp.'s Property Caused by Hurricane Florence.

29. Under the Travelers Policy, Travelers promised "to pay for direct physical loss or damage to Covered Property[1] … caused by or resulting from a Covered Cause of Loss." Exhibit A, at 1.

---

[1] All capitalized but undefined terms shall have the same meaning as in the Policies.

30. The Travelers Policy provides a $500 million per occurrence and aggregate policy limit, subject to any applicable deductible.

31. A "Covered Cause of Loss" is defined broadly to mean "risks of direct physical loss unless the Loss is excluded." *Id*.

32. Hurricane Florence is a Covered Cause of Loss under the Travelers Policy.

33. The Travelers Policy permits UNCW Corp. to "purchase insurance on all or part of the deductibles of this policy, and the existence of such underlying insurance will not prejudice any recovery otherwise payable under this policy. If the limits of such underlying insurance exceed the deductible which would apply under this policy, then the insurance provided will apply only as excess after the limits of the underlying insurance including that portion which exceeds such deductible, have been exhausted." *Id*. at 7.

34. Under the Westchester Policy, Westchester promised to "indemnify [UNCW Corp.] in respect of direct physical loss or damage to the property, occurring during the [policy] period … and caused by any of such perils as are set forth in Item 3 of the schedule, and which are covered by and defined in the [Travelers Policy]." Exhibit B, at Section 1.

35. Item 3 of the Westchester Policy lists "Named Windstorm" as a covered peril. *Id*., at Item 3.

36. Hurricane Florence is a Named Windstorm and is a covered cause of loss under the Westchester Policy.

37. Pursuant to the Westchester Policy, "liability attaches to [Westchester] only after [UNCW Corp.] has incurred a loss for which coverage is afforded and to which the Primary Deductible [as per the Travelers Policy] is applied, the limits of [Westchester's] liability shall be [$2,803,276 Per Occurrence and Annual Aggregate], subject to the applicable Deductible

7

[$50,000], and the Company shall be liable to pay the ultimate net loss up to the full amount of such Limit Insured." *Id*., at Section 2.

38. Under the Westchester Policy, "ultimate net loss" means "the loss sustained by the Insured as a result of the happening of the perils covered by this Policy after making deductions for all salvages, recoveries and other valid and collectible insurance … other than recoveries under the [Travelers Policy]."

39. Thus, with respect to loss caused by a Named Windstorm, like Hurricane Florence, Westchester is responsible for the paying $2,803,276 in loss (in excess of the $50,000 retention).

        **B.**    **Hurricane Florence and UNCW Corp.'s Actions to Restore Operations Following the Storm.**

40. The University issued a mandatory evacuation order effective Tuesday September 11, 2018, indicating that students must leave campus no later than noon on September 11, 2018. The majority of students were permitted to return to the University on October 6, 2018.

41. Hurricane Florence made landfall in Wrightsville Beach NC, which is near the University campus, on September 14, 2018.

42. As a result of winds and rain from Hurricane Florence, UNCW Corp. suffered substantial damage to the Seahawk Facilities, including structural damage to the roofs of these facilities, as well as water damage to the interior living areas.

43. SRP developed a protocol for the safe repair and replacement of water damaged property at the Seahawk Facilities.

44. Following its assessment of the facilities within days of the loss (September 14, 2018), SRP concluded that the water from Hurricane Florence impact should be treated as Category 3 water.

45. UC Environmental conducted its own assessment of the water damage and to determine what steps were required to restore the Seahawk Facilities to safe and normal conditions. UC Environmental also concluded that the water from Hurricane Florence should be treated as Category 3 water.

46. Based on this assessment, SRP and UC Environmental experts concluded that materials impacted by Category 3 water must be removed and replaced.

47. In order to resume operations in a safe and timely manner, and mitigate its business interruption losses and potential exposure, UNCW Corp. followed the Industrial Hygienists' recommendations; first, implementing temporary repairs (encapsulating impacted areas), and then making permanent repairs by removing and replacing the impacted areas.

48. As of Hurricane Florence, UNCW Corp. suffered losses of $5,956,028.57 in property damage, and $1,380,812 in lost rental income, which included refunds of rental payments to students due to University evacuation and closure of housing facilities.

      **C.**    **The Insurers Wrongfully Denied Coverage for the Replacement of Property Impacted by Hurricane Florence Water Damage.**

49. The Insurers have only agreed to pay $960,240.71 (less the deductible of $50,000) for UNCW Corp.'s Seahawk Facility building damages.

50. The Insurers' denied coverage for certain of UNCW Corp.'s losses suffered as a result of the repairs needed to the Seahawk Facilities after Hurricane Florence, challenging the assessment of the Industrial Hygienists made in the immediate aftermath of the Hurricane Florence based on the hindsight analysis of their own consultants.

51. In September 2019, more than a year after Hurricane Florence, Travelers denied coverage for any Hurricane Florence losses "related to any damages related to Category 3 water" based on a report prepared by its own consultant, Crossroads. But the report prepared by

Crossroads following an on-site visit more than a year after Hurricane Florence, does not actually dispute that the water that impacted the Seahawk Facilities was Category 3 water, and only raises purported points of contention with the testing methods used by UNCW Corp.'s consultants and the decisions made by UNCW Corp. in the immediate aftermath of the storm to resume operations. Ultimately, Travelers denies coverage on the grounds that: "we *feel* that this was not a Category 3 water event and therefore any additional repairs related to Category 3 water will not be considered." (emphasis added).

52. More than a year later, in September 2020, Westchester also denied coverage for the permanent repairs recommended by SRP and UC Environmental, while accepting (some) coverage for the temporary repairs to the Seahawk Facilities.

53. Westchester similarly does not directly dispute the determination by UNCW Corp.'s experts that the Seahawk complex suffered Category 3 water damage. Instead, it simply contends there is a "lack of evidence" to support the conclusion of the Industrial Hygienists.

54. Over two years after its initial denial, Travelers later claimed that the repair and replacement costs associated with the damage to the Seahawk Facilities was precluded from coverage because the Category 3 water damage was not immediately conveyed to Travelers.

55. However, the Insurers were timely put on notice that UNCW Corp. had suffered catastrophic losses at its Seahawk Facilities due to Hurricane Florence and the Insurers could have conducted their own inspections and run their own tests in the days and weeks following the storm, rather than second guess the decisions made by UNCW Corp. and the conclusions of the Industrial Hygienists several months later.

56. Further, the Policies also required UNCW Corp. to try to mitigate its losses by resuming operations as quickly and safely as reasonably possible.

57. The Insurers have refused to reimburse UNCW Corp. for all its losses associated with the Category 3 water damage resulting from Hurricane Florence.

58. To date, the Insurers have not reimbursed UNCW Corp. for any Hurricane Florence losses—not even those losses the Insurers have agreed are covered.

### D. The Parties' Tolling Agreement.

59. On August 31, 2021, the Parties entered into a Tolling Agreement (the "Tolling Agreement"). A copy of the Tolling Agreement is attached hereto as Exhibit C.

60. The Tolling Agreement was executed by both Parties.

61. The Tolling Agreement specifically stated:

From August 31, 2021 (the "Effective Date") until and including February 28, 2022 (the "Termination Date") any applicable limitations periods including but not limited to statutes of limitations, statutes of repose, contractual time limitations provided in the Policies, the equitable defense of laches, equitable estoppel, late notice, and any other time-related defense or bar (collectively and separately referred to as "Time Defenses") relating to UNCW [Corp.]'s Claim shall be suspended and tolled.

*See* Exhibit C, at ¶ 1.

62. The Tolling Agreement further provides that it may be "extended past the Termination Date by further written agreement of the Parties." *Id*. at ¶ 5.

63. UNCW Corp. requested a written extension of the Tolling Agreement on February 15, 2022, in an effort to focus on negotiation and resolution of the claims at issue.

64. Insurers denied UNCW Corp.'s request for an extension, which forced UNCW Corp. to initiate this lawsuit.

# CAUSES OF ACTION

## COUNT I
### (Request for Declaratory Judgment)

65. UNCW Corp. incorporates by reference, as if fully set forth herein, the facts set forth in paragraphs 1 through 64 above.

66. An actual controversy has arisen between UNCW Corp. and the Insurers concerning the rights and obligations of the Parties under the express terms of the Policies.

67. The Parties specifically disagree about whether the Insurers are obligated to reimburse UNCW Corp. for the losses it has incurred to repair and replace certain of its property located at the Seahawks Facilities caused by Hurricane Florence in September 2018.

68. This dispute is properly addressed in a declaratory judgment action because a declaratory judgment will serve the useful purpose of clarifying and settling the legal relations at issue.

69. A declaratory judgment is also proper because it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to this proceeding.

70. A judicial declaration is necessary and appropriate so that the Parties to this action may ascertain their rights and duties under the Polices.

71. Under the Policies, the Insurers agreed to reimburse UNCW Corp. for losses arising from "direct physical loss or damage" to its Seahawk Facilities.

72. UNCW Corp. has suffered physical loss of and damage to its Seahawk Facilities caused by Hurricane Florence in September 2018.

73. Pursuant to 28 U.S.C. § 2201, UNCW Corp. seeks a declaratory judgment from this Court establishing the following:

a. The Hurricane Florence losses incurred by UNCW Corp., including but not limited to those losses incurred to make permanent repairs to property impacted by Category 3 water, are covered under the Policies.

    b. Insurers are obligated to reimburse UNCW Corp. for the losses it has incurred from physical loss of and damage to its Seahawk Facilities caused by Hurricane Florence;

    c. Westchester is obligated to pay UNCW Corp. for the full amount of all losses incurred in excess of the $50,000 deductible up to the $2,803,276 limit in the Westchester Policy.

    d. Travelers is obligated to pay UNCW Corp. for all remaining loss incurred in excess of the limits of the Westchester Policy.

**COUNT II**
**(Breach of Contract—Insurers' Wrongful Denial of Coverage for the Replacement of Property Impacted by Category 3 Water)**

74. UNCW Corp. incorporates by reference, as if fully set forth herein, the facts set forth in paragraphs 1 through 73 above.

75. The Policies are valid and enforceable contracts between UNCW Corp. and the Insurers.

76. Under the Travelers Policy, Travelers promised "to pay for direct physical loss or damage to Covered Property … caused by or resulting from a Covered Cause of Loss." Exhibit A at 1.

77. UNCW Corp. has performed under the terms of the Policies.

78. UNCW Corp. has suffered $5,956,028.57 in losses due to physical loss of and damage to its Seahawk Facilities as a result of a named windstorm—Hurricane Florence.

79. Westchester has agreed to pay $960,240.71 (less the deductible of $50,000) for damages to UNCW Corp.'s Seahawk Facilities but has denied coverage for any additional property damage loss.

80. Travelers has refused to pay any Hurricane Florence losses incurred by UNCW Corp., despite the fact that those losses exceed the limits of the Westchester deductible buy back Policy.

81. By refusing to reimburse UNCW Corp., the Insurers are in breach of their obligations under the Policies.

82. As a result of the Insurers' breaches, UNCW Corp. has suffered millions of dollars in damages, as well as damages resulting from the Insurers' improper withholding of insurance benefits that are due and owing under their Policies, and attorneys' fees in this action.

## COUNT III
### (Bad Faith—Insurers' Bad Faith Denial of Coverage for the Replacement of Property Impacted by Category 3 Water)

83. UNCW Corp. realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1 through 82 above.

84. Despite UNCW Corp.'s valid claims, the Insurers have, in bad faith, denied coverage for the permanent repairs recommended by the Industrial Hygienists, based on their erroneous and unreasonable conclusion that permanent repairs recommended by the Industrial Hygienists were not necessary because the water impacting the Seahawk Facilities might not have been Category 3 water.

85. The Insurers' denials are not predicated on an honest disagreement about coverage or a good faith difference in opinion by competing experts. The Insurers do not (and cannot in good faith) directly dispute the conclusions the Industrial Hygienists formed based on inspections conducted in the immediate aftermath of the storm that the water impacting the Seahawk Facilities should be treated as Category 3 water. The Insurers have no tests showing the lack of Category 3 water to contest these conclusions. Rather, the Insurers' coverage denials are based on hindsight

critiques of UNCW Corp.'s actions in the wake of the storm and speculation about the results of hypothetical additional tests that the Insurers could have conducted, but never actually did. Therefore, the Insurers denials are a product of malice, gross negligence, oppression, or wanton and reckless disregard of UNCW Corp.'s coverage rights.

86. Insurers' bad faith refusal to reimburse UNCW Corp. constitutes, among other things, willful and/or wanton conduct, as the Insurers have demonstrated a conscious and/or intentional disregard of and indifference to the rights of UNCW Corp. Insurers know that this type of conduct has and will continue to harm, injure, and damage UNCW Corp.

87. Further, Insurers' refusal to resolve this matter is unwarranted.

88. As a result of the Insurers' bad faith, UNCW Corp. has suffered and will continue to suffer damages, including incurring attorneys' fees, in this action, as well as the full amount of losses UNCW Corp. suffers arising from or relating to the physical loss of and damage to its Seahawk Facilities.

89. UNCW Corp. is entitled to damages as a result of Insurers' bad faith in an amount to be proven at trial, including any special, punitive, treble, consequential, exemplary or other damages available as a result of Insurers' bad faith, as well as its attorneys' fees and litigation costs.

## COUNT IV
### (Insurers' Violation of N.C.G.S. §§ 58-63-10, 58-63-15, 75-1.1 Unfair and Deceptive Practices and Acts)

90. UNCW Corp. realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1 through 89 above.

91. The Insurers have refused to reimburse UNCW Corp. for all of its losses arising from the physical loss of and damage to its Seahawk Facilities and in doing so, they have willfully engaged in unfair or deceptive acts or practices, including but not limited to:

   a. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which their liability has become clear; and

   b. Compelling UNCW Corp. to institute litigation to recover amounts due under the Policies by not reimbursing UNCW Corp. for all of its Hurricane Florence losses.

*See* N.C.G.S. § 58-63-15(11).

92. Insurers' unfair and deceptive practices and acts constitute, among other things, unethical, willful and / or wanton conduct, as the Insurers have demonstrated a conscious and/or intentional disregard of and indifference to the rights of UNCW Corp. Insurers know that this type of conduct has and will continue to harm, injure, and damage UNCW Corp.

93. Further, Insurers' refusal to resolve this matter is unwarranted.

94. By providing insurance, and by engaging in unfair and deceptive practices and acts in breaching their obligations under the Policies, the Insurers have affected commerce.

95. The Insurers' unfair and deceptive practices and acts have proximately caused injury to UNCW Corp.

96. As a result of the Insurers' unfair and deceptive practices and acts, UNCW Corp. has suffered and will continue to suffer damages, including incurring attorneys' fees in this action, as well as the full amount of losses UNCW Corp. suffers arising from or relating to the physical loss of and damage to its Seahawk Facilities.

97. By providing insurance, and by engaging in unfair or deceptive practices in breaching its obligations under their Policies, the Insurers have violated North Carolina law

prohibiting unfair and deceptive practices and acts, including N.C.G.S. §§ 58-63-10, 58-63-15, and 75-1.1.

98. UNCW Corp. is entitled to damages as a result of Insurers' unfair and deceptive acts and practices in an amount to be proven at trial, including any special, punitive, treble, consequential, exemplary or other damages available as a result of Insurers' unfair and deceptive acts and practices, as well as its attorneys' fees and litigation costs.

## **PRAYER FOR RELIEF**

*WHEREFORE*, UNCW Corp. requests a trial by jury and that the Court enter judgment in its favor, as follows:

(1) Declaring that under the Policies, the Insurers are obligated to reimburse UNCW Corp. for all of its losses it has incurred to repair and replace damage to its Seahawk Facilities caused by Hurricane Florence;

(2) Finding that the Insurers have breached their contractual obligations by refusing to reimburse UNCW Corp. for losses it has incurred to repair and replace damage to its Seahawk Facilities caused by Hurricane Florence in September 2018;

(3) Finding that the Insurers have repudiated their coverage obligations and refused to fulfill their coverage obligations to UNCW Corp. in bad faith;

(4) Finding that the Insurers have employed unfair and deceptive practices and acts, in violation of North Carolina law;

(5) Awarding UNCW Corp. the damages it has incurred or will incur, which exceed seventy-five thousand dollars ($75,000);

(6) Awarding UNCW Corp. its attorneys' fees and litigation costs;

(7) Awarding UNCW Corp. any special, punitive, treble, exemplary, consequential, or other damages available to UNCW Corp. as a result of the Insurers' willful bad faith and unfair and deceptive practices and acts; and

(8) Awarding UNCW Corp. such other and further different relief that this Court deems just and proper.

This the 25th day of February, 2022.

/s/ *Henry L. Kitchin, Jr.*
Henry L. Kitchin, Jr.
N.C. State Bar No. 23226
MCGUIREWOODS LLP
300 North Third Street, Suite 320
Post Office Box 599 (28402)
Wilmington, North Carolina 28401
Telephone: (910) 254-3800
Facsimile: (910) 254-3900
E-mail: hkitchin@mcguirewoods.com

*Counsel for Plaintiff UNCW Corporation*

Joseph M. Englert
Georgia Bar No. 112409
MCGUIREWOODS LLP
1230 Peachtree Street, N.E., Suite 2100
Atlanta, Georgia 20209-3534
Telephone: (404) 443-5500
Facsimile: (404) 443-5599
Email: jenglert@mcguirewoods.com

*Counsel for Plaintiff UNCW Corporation by Special Appearance (Pending)*