IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:22-cv-00032-FL

| | |
|---|---|
| UNCW CORPORATION,<br><br>   *Plaintiff*,<br><br> v.<br><br>WESTCHESTER SURPLUS LINES<br>INSURANCE COMPANY and<br>TRAVELERS INDEMNITY COMPANY,<br><br>   *Defendants*. | **PLAINTIFF UNCW<br>CORPORATION'S MEMORANDUM<br>IN SUPPORT OF MOTION TO<br>EXCLUDE DEFENDANT'S<br>DESIGNATED EXPERT MICHAEL<br>LYNN FOGLE** |

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 2 |
| | 1. Hurricane Florence Hits the University of North Carolina Wilmington | 2 |
| | 2. Travelers Hires JS Held. | 3 |
| | 3. Prior Category 3 Water Testimony | 4 |
| | 4. Mr. Fogle's Background | 5 |
| | 5. Mr. Fogle's Expert Report | 5 |
| III. | LEGAL STANDARD | 6 |
| IV. | ARGUMENT | 7 |
| | 1. Mr. Fogle's Testimony is Lay Witness Testimony | 7 |
| | 2. Mr. Fogle's Opinion Necessarily Includes an Opinion He is Not Qualified to Provide | 8 |
| | 3. Mr. Fogle's Opinion is Unreliable Because it is Based on Personal Observations Rather than Date and an Established Methodology. | 11 |
| |     a. Mr. Fogle's opinion lacks sufficient data | 11 |
| |     b. Mr. Fogle's opinion is not reliable because is it not based on an established methodology. | 11 |
| |     c. Mr. Fogle's opinion is too biased to be reliable. | 13 |
| V. | CONCLUSION | 14 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Certain Underwriters at Lloyd's, London v. Sinkovich*,
 232 F.3d 200 (4th Cir. 2000) ..................................................................................................6

*Cooper v. Smith & Nephew, Inc.*,
 259 F.3d 194 (4th Cir. 2001) ................................................................................................11

*Daubert v. Merrell Dow Pharms.*,
 43 F.3d 1311 (9th Cir.1995) .................................................................................................11

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993).......................................................................................................1, 7, 9

*Hall v. Bos. Sci. Corp.*,
 No. 2:12-CV-08186, 2015 WL 868907 (S.D.W. Va. Feb. 27, 2015) ....................................13

*Kumho Tire Co. v. Carmichael*,
 526 U.S. 137 (1999)..........................................................................................................7, 9

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig.*,
 174 F. Supp. 3d 911 (D.S.C. 2016).......................................................................................11

*Mikeron, Inc. v. Exxon Co.*,
 U.S.A., 264 F. Supp. 2d 268 (D. Md. 2003) .........................................................................12

*Oglesby v. Gen. Motors Corp.*,
 190 F.3d 244 (4th Cir. 1999) ..................................................................................................8

*Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People*,
 27 F. Supp. 3d 671 (E.D. Va. 2013) ................................................................................9, 13

*SMD Software, Inc. v. EMove, Inc.*,
 945 F. Supp. 2d 628 (E.D.N.C. 2013)....................................................................................9

*United States v. Johnson*,
 617 F.3d 286 (4th Cir. 2010) ..................................................................................................6

*vonRosenberg v. Lawrence*,
 413 F. Supp. 3d 437 (D.S.C. 2019).......................................................................................13

*Westberry v. Gislaved Gummi AB*,
 178 F.3d 257 (4th Cir. 1999) ..............................................................................................2, 7

**Statutes**

ADA ............................................................................................................................................12

**Other Authorities**

Fed. R. Evid. 701 ..................................................................................................................6, 7, 8

Fed. R. Evid. 702(a).........................................................................................................................9

Fed. R. Evid. 702(b).......................................................................................................................11

Fed. R. Evid. 702(c)—(d) ..............................................................................................................11

Federal Rules of Evidence Rule 702................................................................................6, 7, 11, 12, 13

Rule 701 and Rule 702......................................................................................................................6

Rule 702(2) ....................................................................................................................................11

Plaintiff UNCW Corporation ("UNCW"), by its undersigned counsel, has moved to exclude Defendant's designated expert, Michael Lynn Fogle, and, in support of its motion, states as follows:

I. INTRODUCTION

Mr. Fogle was the lead consultant hired by Travelers in the immediate aftermath of Hurricane Florence in 2018 to assess the scope of damages to the Seahawk Facilities on the University of North Carolina Wilmington campus. Mr. Fogle's prior work and recommendations with respect to whether Category 3 water damage was recoverable under the Travelers' insurance policy issued to UNCW Corp. are at the heart of this dispute. His communications to Travelers (or lack thereof) regarding the University's remediation plans and the Category 3 water issue are central to Travelers' coverage defenses. Mr. Fogle will be a key fact witness at trial.

Despite his involvement as a lay witness, Travelers additionally hired Mr. Fogle to offer what purports to be an expert opinion on the ultimate issue in this case: whether certain repairs to the Seahawk Facilities made by UNCW Corp. were reasonable and necessary and, therefore, covered. This so-called expert opinion is based solely on his personal observations from his prior work for Travelers on the Seahawk Claim. In other words, Mr. Fogle was retained as an "expert" in this litigation to do the exact same thing he did years ago when he served as a consultant for Travelers – a role he has filled for Travelers on more occasions than he could even count. Not surprisingly, Mr. Fogle's expert report tracks precisely with his prior conclusions. He therefore is not, as a threshold matter, capable of providing an unbiased opinion that will aid the jury, since any deviation from his prior coverage-defeating conclusions would undermine his own credibility.

Mr. Fogle's opinion should be excluded for two additional reasons under the *Daubert* standard. First, Mr. Fogle is fundamentally unqualified to give this opinion, which is premised on the conclusion that the water that impacted the Seahawk Facilities was not Category 3 water. Mr.

1

Fogle admits that if it was Category 3 water contamination, then the repairs he claims were "unreasonable and unnecessary" would have had to be done. Therefore, his opinion is entirely predicated on the conclusion that there was no Category 3 water—a conclusion he admittedly is wholly unqualified to offer. Second, Mr. Fogle's opinion lacks sufficient facts, data, principles, and methods. Rather, his opinion relies purely on what he visually observed as a JS Held consultant and rests on the faulty conclusion regarding Category 3 water that he and Travelers cooked up during the claim process to limit Travelers' coverage exposure. For these reasons, the Court should exclude Mr. Fogle's opinion, lest the jury receive inaccurate, unfounded, misleading information under the guise of expert testimony. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) ("[G]iven the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded.").

## II.     BACKGROUND

### 1.     Hurricane Florence Hits the University of North Carolina Wilmington

In anticipation of the impending hurricane, the University issued a mandatory evacuation order effective Tuesday, September 11, 2018. As a result of Hurricane Florence, the University suspended its operations from September 12, 2018 through October 8, 2018. *See* Burnette Depo. at Exhibit A at 12:13-18. On October 6, 2018, the University permitted most students were permitted to return to campus. *Id.* at 12:13-16. Because of winds between 96-110 miles per hour and excessive rainfall from Hurricane Florence, UNCW Corp. suffered substantial damage to the Seahawk Facilities, including structural damage to the roofs of these facilities, as well as water damage to the interior living areas. *Id.* at 43:22-144:13, 127. UNCW Corp. hired NorthStar Recovery Services ("NorthStar") on September 22, 2018 to begin making permanent repairs to the damaged structures by removing and replacing the impacted areas. *See* NorthStar Invoice at Exhibit B.

UNCW Corp. retained two industrial hygienists—SRP Environmental, LLC ("SRP") and UC Environmental, LLC ("UC Environmental" and collectively with SRP the "Industrial Hygienists")—to inspect the Seahawk Facilities in the immediate aftermath of the hurricane. *See* Ex. A, Burnette Depo. at 95:20-96:25. Through various inspections, the Industrial Hygienists determined that the water present at the Seahawk Facilities should be treated as Category 3 water. *See generally* SRP Protocol at Exhibit C and UC Environmental Report at Exhibit D. Following the Industrial Hygienists' recommendations, UNCW Corp. first implemented temporary repairs (encapsulating impacted areas) to allow students to return to campus, and then, about a month later, completed permanent repairs (removing and replacing the impacted areas.) *See* Ex. A., Burnette Depo. at 11:13-18, 13:18-24, 14:7-24, 19:6-7, 30:15-16, and 34:18-23; *see also* Miller Depo. at Exhibit E at 29:21-30:13, 72:3-73:1.

2. **Travelers Hires JS Held**

On September 25, 2018, Travelers retained JS Held to conduct an assessment of the scope of damages at the Seahawk Facilities. *See* Fogle Depo. at Exhibit F at 63:12-15; 78:25-79:3. JS Held is a consulting firm that "go[es] in and assess[es] the damage, evaluate[s] the damage, put[s] prices on the cost of repairs and mitigation" in the context of "water, hurricane, collapse, fire, many different types of situations." *Id.* at 20:11-18. Two days later, on September 27, 2018, JS Held conducted an on-site inspection of the Seahawk Facilities in connection with the Seahawk Claim. *Id.* at 121:16-122:1; Griffin Depo. at Exhibit G at 99, 100:1-17; Mitcham Depo. at Exhibit H at 154:24-25, 155-26; Travelers Claims Notes at Exhibit I pgs. 46-47. The final version of the SRP Protocol, which outlined SRP's plan to treat all water present on the University's campus as Category 3 water, *see* SRP Protocol at Exhibit C, was uploaded to the Smartsheets Portal and accessible by Travelers' consultant, JS Held, no later than November 16, 2018. *See* Ex. H.,

3

Mitcham Depo. at 193; Ex. F., Fogle Depo. at 144:3-22, 166:15-19; *see also* Smartsheets Portal Printout at Exhibit J, Nov. 16, 2018.

### 3. Prior Category 3 Water Testimony

<u>Travelers key fact witnesses agree that the repairs done after November 2018 were due to alleged contamination from Category 3 water:</u>

**Travelers' 30(b)(6) representative, Louie Mitcham** understood that the **"dispute is regarding the amount of those claim— the amount of the loss, which really is the initial stuff, plus the additional work related to the alleged category three water."** Ex. H., Mitcham Depo. at 68:5-9. Because Travelers "did not think it was a category three water event . . . the repairs that were done initially . . . were appropriate." *Id.* at 22-25. Thus, repairs related to Category 3 water were not "appropriate for the damages that were sustained" *Id.* at 70:4-11.

**Mike Fogle** admitted that the repairs done after November 2018 were done because of alleged Category 3 water contamination. *See* Ex. F, Fogle Depo. at 18:12-24 (Q: "Okay. And do you have an understanding of why the insurers contend that those damages are not covered under the policies?" A: "Yes, sir." Q: "And what is your understanding of that?" A. "There's two events—not two events. There's one event, but there's two phases of work. There was the initial phase before the students came back on site, and then there was a second phase of construction or reconstruction that happened after that. The reasoning for that second phase of construction was a Category 3 situation that was never proven."). Further, he stated that "UNCW believe[d] that those [later] repairs were necessary because "[t]hey suspect[ed] that there was Category 3 water in the building." *Id.* at 19:16-19. Mr. Fogle agreed that UNCW's position was that "as a result of that Category 3 water damage, those [second phase] repairs were –were required in order to restore the property to pre-loss condition." *Id.* at 19:20-20:2. He also conceded that "if it was

4

Category 3" "even if it was dry, it would need to be cut out and removed," Fogle Expert Depo. at Exhibit K at 116:21-117:6, going even further to admit that "the standard says that if there's Category 3 water on a surface, and it's known to be Category 3 water, it needs to be dealt with and removed." *Id.* at 127:11-21. Ultimately, Mr. Fogle's "expert" opinion hinges upon his own understanding of water classification at the Seahawk Facilities. *Id.* at 128:11-14 (Q: "Okay. So if it was Category 3, this opinion that you rendered here would not be accurate, true?" A: "My opinion right here is true, because there's nothing [that tells] me that is was Category 3 water.").

4. **Mr. Fogle's Background**

Mr. Fogle has "worked with Travelers in the past before the Seahawk claims" "[t]oo many [times] to count off the top of [his] head." Ex. F, Fogle Depo. at 24:21-25:3. Mr. Fogle admits he is "not an industrial hygienist." *Id.* at 133:6-8. He has "very little" "classroom training" in "water damage." He has no particular certification in water damage, no particular certification in water remediation, and is not an engineer. *Id.* at 37:2-20. Mr. Fogle concedes that "[he] can't tell you if it's Category 3 water without testing, and [he is] not qualified to do that." Neither Mr. Fogle nor anyone from JS Held tested the water, despite JS Held's capability to perform testing. *See* Ex. K, Fogle Expert Depo. at 95:6-16. And Mr. Fogle has stated that "observable damage" cannot tell you "whether or not something has been impacted by Category 3 water." *Id.* at 126:11-15. This is the "only claim involving damages from Hurricane Florence that [Mr. Fogle] w[as] involved in that concerned the scope of Category 3 water damages." And he has "n[ever] provided an expert report in litigation."

5. **Mr. Fogle's Expert Report**

Mr. Fogle offers his opinion as a "Construction Professional." In his "expert" report, Mr. Fogle states that "J.S. Held opinions are based on observable and/or identified site conditions." Fogle Expert Report at Exhibit L p. 4. He lists no other bases for his opinion. He asserts that

5

"there was **no need** for demolition following the students return. The only remaining work were the cosmetic activities noted above." *Id.* at p. 3 (emphasis in original). He further states that the "the scope of work completed [after the students' return] was not reasonable based on the observed damage," *id.*, and "there was no need for additional demolition during the breaks." *Id.* at p. 4. Finally, while he states that "only 'cosmetic activities' were required" following the students' return to campus, he does not explain why or how he came to this conclusion.

For the reasons discussed below, Mr. Fogle's opinion should be excluded under Rule 702 of the Federal Rules of Evidence.

### III. LEGAL STANDARD

A lay witness's testimony is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. On the other hand, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; ***and*** (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702 (emphasis added).

A critical distinction between Rule 701 and Rule 702 testimony is that an expert witness "must possess some specialized knowledge or skill or education that is not in the possession of the jurors." *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000); *see also United States v. Johnson*, 617 F.3d 286, 294 (4th Cir. 2010) (quoting Fed. R. Evid. 702 advisory committee's note) ("[T]he Supreme Court has made clear that in addition to having the

requisite specialized knowledge, the expert's testimony must 'be the reliable product of reliable principles and methods that are reliably applied to the facts of the case.'").

Because expert witnesses have the potential to "be both powerful and quite misleading," *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993), the district judge must "exercise[] a gate keeping function to assess whether the proffered evidence is sufficiently reliable and relevant." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). Individuals may not provide expert opinions when they have an unrelated or scarce background, or fail to meet all requirements set forth in Rule 702. *See generally Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

IV. **ARGUMENT**

    1. **Mr. Fogle's Testimony is Lay Witness Testimony**

As an initial matter, Mr. Fogle is qualified to be a lay witness, not an expert witness. Per Federal Rule of Evidence 701, a lay witness's testimony is "rationally based on the witness's perception" and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Per Mr. Fogle's own admissions, his testimony is based on "observable and/or identified site conditions," *see* Fogle Expert Report p. 4, i.e., what he rationally perceived at the site. *See also* Ex. K, Fogle Expert Depo. at 138:21-139:7 (Mr. Fogle admits that his conclusion that "[t]here is nothing in the scope of work or hurricane related damage that would require demolition following the students' return" is based on "[his] visual observations and inspections," which are "the only observations [he's] got.") Additionally, his opinion is not based on scientific, technical, or other specialized knowledge that would fall under Federal Rule of Evidence 702. As stated above, his basis for his opinion is what he observed with his own eyes. When pushed further in his expert deposition to rationalize his opinion that the work done after the students returned to

7

campus was unreasonable and unnecessary, Mr. Fogle articulated his personal beliefs and unsupported theory:

> Q. Is it your opinion that that work that was done after the students returned to campus was unreasonable and unnecessary to restore the building to its pre-loss condition?
> A. I've been shown nothing that would make me believe that was necessary.
> Q. Not my question. But it's a very specific question. Is it your opinion that the work that was done after the students returned to campus was unreasonable and unnecessary to restore the building to its pre-loss condition?
> A. I have seen nothing that would let me know that this was necessary. So it's my opinion it was not necessary.
> Q. Okay. So you're saying that you don't know, but you don't have enough information to make that determination?
> A. I've been shown nothing that would make me change my mind.

*Id.* at 106:12-107:6.

It is woefully insufficient to assert that 1) Mr. Fogle's visual observation of the site, which he admits cannot tell you "whether or not something has been impacted by Category 3 water," *id.* at 126:11-15, and that 2) he has been "shown nothing that would make him change [his] mind, *id.* at 106:12-107:6, are bases for an expert opinion. Plainly, his visual observations make Mr. Fogle's opinion more in line with lay witness testimony, *see generally* Fed. R. Evid. 701. Additionally, the Fourth Circuit upheld the exclusion of a proposed expert witness when the opinion was based, in part, on "a personal theory." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 249 (4th Cir. 1999). Thus, because by his own admissions Mr. Fogle's "expert" opinion relies solely on eyewitness testimony and his own unsubstantiated personal beliefs, the Court should exclude his testimony.

**2. Mr. Fogle's Opinion Necessarily Includes an Opinion He is Not Qualified to Provide**

While Mr. Fogle purports to offer an opinion as a "Construction Professional," his opinion is inherently scientific because it rests on his assertion that the water present at the Seahawk Facilities was not Category 3 water. It is undisputed that the repairs Mr. Fogle contends were "unreasonable and unnecessary" were done after the students returned to campus in October 2018

8

because of the University's concern about Category 3 water contamination. *See, e.g.*, Ex. H, Mitcham Depo. at 70:4-11; Ex. F, Fogle Depo. at 19:20-20:2; Ex. K, Fogle Expert Depo. at 117:22-118:13; 128:11-14. And Mr. Fogle himself admits that his opinion is based upon the categorization of water. *See* Ex. K, Fogle Expert Depo. at 128:13-14 ("My opinion right here is true, because there's nothing showing me that that was Category 3 water.").

But Mr. Fogle cannot provide this opinion because, by his own admission, he has no qualifications, specialized knowledge, or training on the classification of water. Ex. F., Fogle Depo. at 37:2-38:5. In evaluating a potential expert's qualifications, "[t]he trial court ha[s] to decide whether this particular expert ha[s] sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case," *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999), and "*Daubert* requires that the expert possess expertise assessed in the context of the nature of the issue, the expert's particular expertise, and the subject of his or her testimony." *Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People*, 27 F. Supp. 3d 671, 674 (E.D. Va. 2013) (internal citations excluded); *see also* Fed. R. Evid. 702(a) (requiring the expert to have "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue."). Moreover, "[w]here, however, a purported expert witness has neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered", that witness's testimony may be excluded." *SMD Software, Inc. v. EMove, Inc.*, 945 F. Supp. 2d 628, 639 (E.D.N.C. 2013).

Here, Mr. Fogle has admitted that he is "not an industrial hygienist," Ex. F., Fogle Depo. at 133:6-8 and that he has "very little" "classroom training" in "water damage." *Id.* at 37:2-6. He has no particular certification in water damage, he has no particular certification in water remediation, and he is not an engineer. *Id.* at 37:2-20. He has additionally conceded that "[he] can't tell you if it's Category 3 water without testing, and [he is] not qualified to do that," *id.* at

9

37:21-38:5, while also admitting that he did not do any testing, nor did anyone from JS Held. *See* Ex. K, Fogle Expert Depo. at 95:6-16. Moreover, nothing in his C.V. suggests "satisfactory knowledge, skill, experience, training []or education on the issue" of water classification. Indeed, Mr. Fogle admitted he is not an expert on the classification of Category 3 water. *See* Ex. F, Fogle Depo. at 37:21-38:5 ("Q: Do you consider yourself to be an expert on the standards for categorizing Category 3 water damage?" A: ". . . I can't tell you if it's Category 3 water without testing, and I'm not qualified to do that."); *see also* Ex K., Fogle Expert Depo. at 119:20-22 (Q: "What do you mean the right interpretation prevailed? I don't understand." A: "That there was no Category 3 water shown. There [were] no pieces of paper that said, 'We tested it. It is Category 3 water.'" Q: "Right. Right. Well, look, that—I understand that, obviously, I understand that you don't agree with SRP's challenge. I also understand that you're not an expert on that –" A: "Yes, sir. I'm not." Q: "—issue, right?" A: "That's correct.").

Yet, his opinions on the scope of "reasonable and necessary" repairs is predicated entirely on the assertion that the water present at the Seahawk Facilities was not Category 3 water, an assertion that he espouses and reiterates throughout his depositions.[1] Because Mr. Fogle is entirely unqualified by his own admission to proffer such an opinion, his opinion should be excluded.

---

[1] *See* Ex. F., Fogle Depo. at 101:14-22 (Q: "Okay. So this draft report provided to Sedgwick September 23rd, 2018, clearly indicates that SRP had determined that due to the source of the water intrusion and water characterization definitions under the IICRC definitions, the water impact or -- so the water from this impact was going to be defined at Category 3; true?" A: "I see that's their opinion. I don't agree with it, but I see it."); *id.* at 141:15-20 (Q: "Do you see this document "[w]here it talks about the SRP's determination -- or excuse me, the decision to deem the water damage throughout the campus as Category 3 water damage?" A: "That's what it says. I don't agree with it, but that's what it says."); *id.* at 145:4-10 ("It also says that they had determined that all water that came from the sky at UNCW was Category 3 water. That is—I highly disagree with that."); *see also* Ex. K, Fogle Expert Depo. at 117:13-15 ("I've seen no indication or nothing to tell me that there was Category 3 water in this building."); *Id.* at 119:15 ("[T]here was no Category 3 water shown."); *id.* at 127:23-24 ("I'm also saying that I don't think this was Category 3 water."); *id.* at 128:8-10 ("I don't believe it's Category 3 water, and if that—if it was Category 3 water, that's a whole different subject.").

### 3. Mr. Fogle's Opinion is Unreliable Because it is Based on Personal Observations Rather than Data and an Established Methodology.

#### a. Mr. Fogle's opinion lacks sufficient data

Even if Mr. Fogle was qualified to provide his opinion, the opinion itself still fails to meet the requirements set forth by Federal Rule of Evidence 702. As established above, Mr. Fogle's opinion is based only on his inadequate visual inspection of the site and his unsubstantiated belief that the water was not Category 3. His opinion also lacks sufficient data, which Rule 702(2) requires if, as here, the opinion is not based on sufficient facts. *See* Fed. R. Evid. 702(b) (requiring that "testimony [be] based on sufficient facts or data." Additionally, "trial judges may evaluate the data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the expert's testimony as reliable." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig.*, 174 F. Supp. 3d 911, 920 (D.S.C. 2016). Finally, "[t]he proponent of the [expert] testimony must establish its admissibility by a preponderance of proof." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001). Here, Mr. Fogle has not offered any data whatsoever to support his opinion. Therefore, absent sufficient facts or data, Mr. Fogle's opinion should be excluded on this basis alone.

#### b. Mr. Fogle's opinion is not reliable because is it not based on an established methodology.

Mr. Fogle not only fails to meet the 702(a) and (b) requirements, but his opinion also fails to meet 702(c) and (d) requirements. *See* Fed. R. Evid. 702(c)-(d) (requiring that "testimony [be] the product of reliable principles and methods" and that the expert "reliably appl[y] th[ose] principles and methods to facts of the case." "If the proffered expert testimony is not based on independent research, the party proffering it must come forward with other objective, verifiable evidence that the testimony is based on 'scientifically valid principles'" *Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311 (9th Cir. 1995). Mr. Fogle has failed to articulate even one guiding

principle that led him to his conclusion that the second phase of repairs to the Seahawk Facilities was unnecessary and unreasonable.

Furthermore, while experience can be a substitute for data, principles, and methods in certain circumstances, *see* Committee Notes to Fed. R. Evid. 702 ("Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony"), the experience must be sufficiently explained and linked to the opinion being provided. *See Mikeron, Inc. v. Exxon Co.*, U.S.A., 264 F. Supp. 2d 268, 274 (D. Md. 2003) ("If an 'expert' witness is relying solely or primarily on experience . . . he must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."). Mr. Fogle has failed to do this. In fact, when asked explicitly how he made the "assessment about whether or not those areas that were wet had reached that threshold where they would need to be cut out and replaced," Mr. Fogle merely responded, "[t]hrough experience and observation," without explaining the experience he was referring to or how it led him to his consequential decision. *See* Ex. K, Fogle Expert Depo. at 103:7-11. At no point in his expert report, nor either of his two depositions, did Mr. Fogle articulate how his experience[2] influenced his opinion. Without linking his experience to the case facts or explaining

---

[2] Mr. Fogle lists the following experience in his expert report:
- Extensive experience in project and business recovery along with risk management, problem solving, building, developing, disaster restoration, and cost management.
- Completed projects for the following government agencies: FEMA, EPA, HUD, GSA, Army Corp. of Engineers, Army, Air Force, Navy, Marines, Coast Guard plus multiple cities, counties, and states.
- Project management experience in facilities management, building, up-fits, code upgrades, ADA upgrades, renovating and developing of residential, multi family, commercial, municipality, commercial marinas, municipality boat access ramps, ferry ports and commercial government projects as project management or turnkey contractor or developer.
- Consulting, risk management, cost control and business management.

how the two together led to his opinion, he cannot use his "experience" as a substitution for the requisite data, principles, and methodology.

While Rule 702 sets forth four separate requirements, "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; **and** (d) the expert has reliably applied the principles and methods to the facts of the case," *see* Fed. R. Evid. 702 (emphasis added), Mr. Fogle cannot meet even **one** of these four prongs. Put simply, Mr. Fogle is a fact witness masquerading as an expert, and is woefully unqualified under the Federal Rules of Evidence to offer an expert opinion in this case and should therefore be excluded from testifying in that capacity at trial.

### c. Mr. Fogle's opinion is too biased to be reliable

Additionally, Mr. Fogle's opinion is too heavily influenced by personal bias and his relationship with Travelers to be reliable. While bias is generally a question of weight, not admissibility, *see, e.g.*, *vonRosenberg v. Lawrence*, 413 F. Supp. 3d 437, 450 (D.S.C. 2019), in certain instances, courts do consider it in their vetting of expert witnesses. *See Hall v. Bos. Sci. Corp.*, No. 2:12-CV-08186, 2015 WL 868907, at *4 (S.D.W. Va. Feb. 27, 2015) ("consider[ing] the independence of an expert's testimony"). Furthermore, "[a]n additional factor [courts] consider is whether the expert testimony was prepared solely for purposes of litigation, or whether it flowed naturally from the expert's research or technical work." *Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People*, 27 F. Supp. 3d 671, 673 (E.D. Va. 2013).

Here, Mr. Fogle has "worked with Travelers in the past before the Seahawk claims" "[t]oo many [times] to count off the top of [his] head." Ex. F, Fogle Depo. at 24:21-25:3. He was also an active participant in the assessment of UNCW Corp.'s loss from the beginning, deciding in his role with Travelers that the costs incurred after the students returned to campus should not be paid.

*Id.* at 231:23-232:3. Mr. Fogle is incapable of offering an unbiased expert opinion in this case regarding the issue of the scope of reasonable and necessary repairs to the Seahawk Facilities because he has already been paid significant funds from Travelers to provide the same analysis during his prior engagement, and the efficacy of that prior assessment is one of the central issues in this case—both with respect to the breach of contract count and the bad faith count. He is inherently biased towards providing an expert opinion that supports his prior advice to Travelers, which was the cornerstone of Travelers' erroneous coverage denial giving rise to this litigation. There are significant personal stakes for Mr. Fogle not to undermine his own credibility, his prior sworn testimony early in this case, or his long and profitable business relationship with Travelers. He is not fit to provide unbiased testimony to aid the jury and for this additional reason he should be excluded from testifying as an expert in this case.

## V. CONCLUSION

For the foregoing reasons, UNCW Corporation respectfully requests that the opinions and testimony of Michael Lynn Fogle be excluded.

Respectfully submitted, this the 19th day of June, 2023.

/s/ *Henry L. Kitchin, Jr.*
Henry L. Kitchin, Jr.
N.C. State Bar No. 23226
MCGUIREWOODS LLP
300 North Third Street, Suite 320
Post Office Box 599 (28402)
Wilmington, North Carolina 28401
hkitchin@mcguirewoods.com

*Counsel for Plaintiff UNCW Corporation*

Joseph M. Englert
Georgia Bar No. 112409
MCGUIREWOODS LLP
1230 Peachtree Street, N.E., Suite 2100
Atlanta, Georgia 20209-3534

jenglert@mcguirewoods.com

Allison L. Ebeck
Pennsylvania Bar No. 322837
MCGUIREWOODS LLP
260 Forbes Ave., Suite 1800
Pittsburgh, PA 15222
aebeck@mcguirewoods.com

Emma R. Leonelli
Pennsylvania Bar No. 322705
MCGUIREWOODS LLP
260 Forbes Ave., Suite 1800
Pittsburgh, PA 15222
eleonelli@mcguirewoods.com

*Counsel for Plaintiff UNCW Corporation by Special Appearance*

15
Case 7:22-cv-00032-FL   Document 51   Filed 06/19/23   Page 19 of 20

**CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record who have made an appearance in the above-captioned case.

Dated: June 19, 2023 */s/ Henry L. Kitchin Jr.*
Henry L. Kitchin, Jr.